**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBIN HERMAN, individually and on behalf of all others similarly situated; | ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| INTRASYSTEMS, LLC, and ALLEGHENY HEALTH NETWORK, | ) ) ) |
| Defendant. | ) ) ) ) ) ) |

**Civil Action No.: 1:25-cv-10204**

<u>**CLASS ACTION**</u>

<u>**DEMAND FOR JURY TRIAL**</u>

<u>**ORIGINAL COMPLAINT—CLASS ACTION**</u>

Plaintiff Robin Herman ("Plaintiff"), individually and on behalf of all others similarly situated, sues Defendants IntraSystems, LLC ("IntraSystems") and Allegheny Health Network ("AHN") (collectively, "Defendants"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendants. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record.

## I.    <u>INTRODUCTION</u>

1.    This class action arises out of the recent data security incident and data breach that was perpetrated against Defendants (the "Data Breach"), which held in its possession certain personally identifiable information ("PII") and protected health information ("PHI") (collectively, the "Private Information") of Plaintiff and other current and former patients of AHN, the putative class members ("Class").

2.      Defendant AHN is a healthcare company that provides home medical equipment as well as medical services to patients.

3.      Defendant IntraSystems is an IT consulting company, managed services provider, and systems integrator that specializes in the deployment and delivery of IT infrastructure, cybersecurity services and assessments, virtualization services, security and cloud solutions.

4.      AHN's public notice of the Data Breach states that Defendant became aware of the Data Breach on November 19, 2024.[1]

5.      On January 17, 2025, Defendant mailed Plaintiff a letter advising her that the Private Information compromised in the Data Breach included certain personal or protected health information of AHN's patients, including Plaintiff. This Private Information included but is not limited to "name, date of birth, address, Social Security number…health insurance identification number and other health insurance information, and treatment information including your diagnoses, provider's information, treatments/procedures, date(s) of service, prescription information, and medical device serial number, as applicable." Notice of Data Security Incident, Exhibit A hereto.

6.      The Private Information was acquired by cyber-criminals who perpetrated the attack and remains in the hands of those cyber-criminals. According to an article in *The HIPAA Journal*, approximately 293,900 individuals were affected. [2]

---

[1] Defendant AHN, "IT Vendor Notifies Patients of AHN's Home Medical Equipment and Home Infusion Companies of Cybersecurity Incident," *available at* https://www.ahn.org/newsroom/press-releases/press-release?pr=ahn-it-vender-notifies-patients-of-home-medical-equipment-and-home-infusion-companies-about-cyber-security-incident (*last accessed* January 27, 2025).

[2] The HIPAA Journal, "294,000 Allegheny Health Network Patients Affected by Business Associate Cyberattack," *available at* https://www.hipaajournal.com/allegheny-health-network-ba-cyberattack/ (*last accessed* January 27, 2025).

7.      The Data Breach resulted from Defendants' failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals' Private Information with which they were entrusted for treatment.

8.      Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendants' inadequate safeguarding of Class Members' Private Information that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information was subjected to unauthorized access by an unknown third party and precisely what specific type of information was accessed.

9.      Defendants maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendants' computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendants, and thus Defendants were on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

10.     Defendants, through its employees, disregarded the rights of Plaintiff and Class Members (defined below) by, among other things, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions. Defendants also failed to disclose that they did not have adequately robust computer systems and security practices to safeguard Plaintiff's and Class Members' Private Information and failed to take standard and reasonably available steps to prevent the Data Breach.

11.     In addition, Defendants' employees failed to properly monitor the computer network and systems that housed the Private Information. Had Defendants' employees

(presumably in the IT department) properly monitored its property, it would have discovered the intrusion sooner.

12.     Plaintiff's and Class Members' identities are now at risk because of Defendants' negligent conduct since the Private Information that Defendants collected and maintained is now in the hands of data thieves.

13.     Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes. These crimes include opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

14.     Because of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

15.     Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

16.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

17.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to

Defendants' data security systems, future annual audits, and adequate credit monitoring services funded by Defendants.

18.     Accordingly, Plaintiff sues Defendants seeking redress for their unlawful conduct, and asserting claims for: (i) negligence, (ii) breach of implied contract, and (iii) unjust enrichment.

## II.     PARTIES

19.     Plaintiff Robin Herman is and at all times mentioned herein was an individual citizen of Pennsylvania, residing in the city of Erie.

20.     Defendant IntraSystems is a limited liability company with its principal place of business located in Braintree, Massachusetts. IntraSystems registered agent for service of process is Corporation Service Company, 84 State Street, Boston, Massachusetts 02109.

21.     Defendant AHN is a Pennsylvania non-profit corporation with its principal place of business in Pittsburgh, Pennsylvania.

## III.     JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are at least 100 putative Class Members and members of the proposed Class, including Plaintiff, are citizens of states different from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

23.     This Court has jurisdiction over Defendants through their business operations in this District, the specific nature of which occurs in this District. IntraSystems' principal place of business is in this District. Defendants intentionally avail themselves of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(l) because a substantial part of the events giving rise to this action occurred in this District. Defendant

IntraSystems is also based in this District, maintains Plaintiff's and Class Members' Private Information in this District, and has caused harm to Plaintiffs and Class Members from and/or in this District.

## IV.    FACTUAL ALLEGATIONS

### *Defendants' Businesses*

25.    Defendant AHN is a healthcare company that provides home medical equipment as well as medical services to its patients.

26.    Defendant IntraSystems is an IT consulting company, managed services provider, and systems integrator that specializes in the deployment and delivery of IT infrastructure, cybersecurity services and assessments, virtualization services, security, and cloud solutions.

27.    Plaintiff and Class Members are current and former patients at AHN.

28.    In the ordinary course of their relationship with Defendants, each patient must provide (and Plaintiff did provide) Defendants with sensitive, personal, and private information, such as his or her:

- address;
- date of birth;
- Social Security number;
- health insurance information;
- medical information.

29.    All of Defendants' employees, staff, entities, sites, and locations may share patient information with each other for various purposes, as should be disclosed in a HIPAA compliant privacy notice ("Privacy Policy") that Defendants are required to maintain.

30.    Upon information and belief, Defendant AHN's HIPAA Privacy Policy is provided to every patient prior to receiving treatment and upon request.

31.    Defendants agreed to and undertook legal duties to maintain the protected health and personal information entrusted to it by Plaintiff and Class Members safely, confidentially, and

in compliance with all applicable laws, including the Health Insurance Portability and Accountability Act ("HIPAA").

32.    The patient and employee information held by Defendants in their computer system and network included the Private Information of Plaintiff and Class Members.

### The Data Breach

33.    A Data Breach occurs when cyber criminals intend to access and steal Private Information that has not been adequately secured by a business entity like Defendant.

34.    According to the Notice letter Defendant mailed to Plaintiff (Exhibit A),

> **What Happened?** On November 19, 2024, we became aware of a cybersecurity incident that led to unauthorized access to certain computer systems beginning on October 11, 2024. The impacted systems were being hosted by a third-party service provider and contained Allegheny Health Network ("AHN") Home Medical Equipment and Home Infusion patient information, and an unauthorized user was able to obtain some data from these systems, which may include your information. Once discovered, immediate steps were taken to begin an investigation, secure patient information, and stop the unauthorized access to the systems.

> **What Information Was Involved?** The information on the impacted systems that may have been involved includes your name, date of birth, address, Social Security number, financial account number provided to AHN on paper (but no access codes), health insurance identification number and other health insurance information, and treatment information including your diagnoses, provider's information, treatments/procedures, date(s) of service, prescription information, and medical device serial number, as applicable.

35.    The U.S. Department of Health and Human Services requires, "[i]f a breach of unsecured protected health information affects *500 or more individuals*, a covered entity must notify the Secretary of the breach without unreasonable delay and in *no case later than 60 calendar days* from the discovery of the breach."[3] Further, if "the number of individuals affected by a breach

---

[3] U.S. Department of Health and Human Services, *Submitting Notice of a Breach to the Secretary* (Feb. 27, 2023) https://www.hhs.gov/hipaa/for-professionals/breach-notification/breach-reporting/index.html (last viewed December 19, 2024) (emphasis added).

is uncertain at the time of submission, the covered entity should provide an estimate," and later provide an addendum or correction to HSS.[4]

36.     Plaintiff's notice letter was dated January 17, 2025—around two months after the "unauthorized access" to Plaintiff's and Class Members' Private Information occurred.

37.     Defendants had obligations created by HIPAA, contract, industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

38.     Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

39.     Defendants' data security obligations were particularly important given the substantial increase in Data Breaches in the healthcare industry preceding the date of the breach.

40.     In 2023, a record 3,205 data breaches occurred, resulting in around 353,027,892 individuals' information being compromised, a 78% increase from 2022.[5] Of the 2023 recorded data breaches, 809 of them, or 25%, were in the medical or healthcare industry.[6] The 809 reported breaches reported in 2023 exposed nearly 56 million sensitive records, compared to only 343 breaches that exposed just over 28 million sensitive records in 2022.[7]

41.     Data breaches such as the one experienced by Defendants have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.

---

[4] *Id.*
[5] *See* Identity Theft Resource Center, *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last visited January 17, 2025).
[6] *Id*.
[7] *Id*. at 11, Fig.3.

42.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[8]

43.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

**_Defendants Fail to Comply with FTC Guidelines_**

44.      The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

45.     In 2016, the FTC updated its publication, _Protecting Personal Information: A Guide for Business_, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal patient information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[9] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[10]

46.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords

---

[8] Maria Henriquez, _Iowa City Hospital Suffers Phishing Attack, Security Magazine_ (Nov. 23, 2020), _available at_ https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited January 27, 2025).
[9] Federal Trade Commission, _Protecting Personal Information: A Guide for Business_ (2016), _available at_ www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited January 27, 2025).
[10] _Id_.

to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

47.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions also clarify the measures businesses must take to meet their data security obligations.

48.    These FTC enforcement actions include actions against healthcare providers like Defendant. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

49.    Defendants failed to properly implement basic data security practices.

50.    Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

51.    Defendants were always fully aware of their obligation to protect the PII and PHI of AHN's patients. Defendants were also aware of the significant repercussions that would result from their failure to do so.

10

*Defendants Fail to Comply with Industry Standards*

52.     As shown above, experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

53.     Several best practices have been identified that a minimum should be implemented by healthcare providers, including, but not limited to, educating all employees; using strong passwords; creating multi-layer security, including firewalls, antivirus, and anti-malware software; encryption, making data unreadable without a key; using multi-factor authentication; protecting backup data; and limiting which employees can access sensitive data.

54.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

55.     Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including, without limitation, PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

56.     These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendants failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

***Defendants' Conduct Violates HIPPA and Reveals Its Insufficient Data Security***

57.    HIPAA requires covered entities such as Defendants to protect against reasonably anticipated threats to the security of sensitive patient health information.

58.    Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

59.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data Defendants left unguarded. HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a) (1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

60.    A Data Breach such as the one Defendants experienced is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule. *See* 45 C.F.R. 164.402 (Defining "Breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under [the HIPAA Privacy Rule] which compromises the security or privacy of the protected health information.").

61.    Defendants' Data Breach resulted from a combination of insufficiencies that demonstrate it failed to meet standards mandated by HIPAA regulations.

## V.    <u>DEFENDANTS' BREACH</u>

62.    Defendants breached their obligations to Plaintiff and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their

computer systems and its data. Defendants' unlawful conduct includes, but is not limited to, the

following acts and/or omissions:

    a.   Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.   Failing to adequately protect patients' Private Information;

    c.   Failing to properly monitor its own data security systems for existing intrusions;

    d.   Failing to ensure that vendors with access to Defendants' protected health data employed reasonable security procedures;

    e.   Failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    f.   Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

    g.   Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

    h.   Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

    i.   Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

    j.   Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules related to individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

    k.   Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

    l.   Failing to train all members of Defendants' workforce effectively on the policies and procedures about PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b); and/or

    m.   Failing to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as they had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning

meaning without use of a confidential process or key" (45 C.F.R. § 164.304, definition of "encryption").

63.    As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing malignant computer code, and inadequately trained employees who opened files containing malignant computer code, Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

64.    Plaintiff and Class Members now face an increased risk of fraud and identity theft.

***Data Breaches Put Consumers at an Increased Risk of Fraud and Identify Theft***

65.    Data Breaches such as the one experienced by Defendants' are especially problematic because of the disruption they cause to the daily lives of victims affected by the attack.

66.    The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[11]

67.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (possibly an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[12]

---

[11] U.S. Government Accountability Office, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited January 27, 2025) ("GAO Report").
[12] Federal Trade Commission, *What To Do Right Away* (2024), *available at* https://www.identitytheft.gov/Steps (last visited January 27, 2025).

68.     Theft of Private Information is gravely serious. PII/PHI is a valuable property right.[13] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

69.     Theft of PHI is also gravely serious: "A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[14] Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

70.     It must also be noted there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which studied data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

---

[13] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[14] *See* Federal Trade Commission, *Medical Identity Theft*, *available at* http://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited January 27, 2025).

71.    Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

72.    There is a strong probability that all the stolen information has been dumped on the black market or will be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

73.    Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[15] PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

74.    Healthcare data is especially prized by data thieves. The National Association of Healthcare Access Management reports, "[p]ersonal medical data is said to be more than ten times as valuable as credit card information."[16]

75.    According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016—the same as a Facebook account. That pales in comparison with the asking price for medical data, which was selling for $300 and up.[17]

---

[15] Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), *available at* https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited January 27, 2025).

[16] Laurie Zabel, *The Value of Personal Medical Information: Protecting Against Data Breaches*, NAHAM Connections, *available at* https://www.naham.org/page/ConnectionsThe-Value-of-Personal-Medical-Information (last visited January 27, 2025).

[17] Paul Ducklin, *FBI "ransomware warning" for healthcare is a warning for everyone!*, Sophos (Oct. 29, 2020) *available at* https://news.sophos.com/en-us/2020/10/29/fbi-ransomware-warning-for-healthcare-is-a-warning-for-everyone/ (last visited January 27, 2025).

76.     In recent years, the medical services industry has experienced disproportionally higher numbers of data theft events than other industries. Defendants therefore knew or should have known this and strengthened its data systems accordingly. Defendants were put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

## VI.     PLAINTIFF'S EXPERIENCE

77.     Plaintiff Robin Herman is and at all times mentioned herein was an individual citizen of Pennsylvania, residing in the city of Erie.

78.     Plaintiff used AHN's services, requiring her to provide her Private Information to Defendants.

79.     Plaintiff received notice of the Data Breach around January 17, 2025, informing her that her sensitive information was part of Defendants' Data Breach, including her "treatment information." Exhibit A.

80.     Plaintiff reasonably expected and understood that Defendants would take, at a minimum, industry standard precautions to protect, maintain, and safeguard her Private Information from unauthorized users or disclosure, and would timely notify her of any data security incidents related to the same.

81.     Plaintiff is very careful about sharing her sensitive PII and PHI. she has never knowingly transmitted unencrypted sensitive PII or PHI over the internet or any other unsecured source. Plaintiff also stores any documents containing her sensitive information in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

82.     Because of the Data Breach and at the recommendation of Defendants and AHN's Notice, Plaintiff made reasonable efforts to mitigate the effect of the Data Breach, including, but

not limited to, researching the Data Breach, monitoring her credit information, and changing passwords on her various accounts.

83.     Plaintiff has spent much time responding to the dangers from the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and recreation.

84.     Plaintiff is especially alarmed by the type of stolen or accessed PII and PHI listed on AHN's notice letter. Despite Defendants providing that list, she cannot be sure whether more of her PII or PHI was exfiltrated or even what the phrase "treatment information" includes.

85.     Plaintiff knows that cybercriminals often sell Private Information, and that her PII or PHI could be abused months or even years after a data breach.

86.     Plaintiff would not have provided her Private Information to Defendants had she known that Defendants would not take reasonable steps to safeguard it.

## VII.    PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

87.     To date, Defendants have done little to provide Plaintiffs and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendant has only offered access to identity monitoring services.

88.     The credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud.

89.     Furthermore, Defendants' advice to Plaintiff and Class Members places the burden on Plaintiff and Class Members, rather than on Defendants, to investigate and protect themselves from Defendants' tortious acts resulting in the Data Breach. Rather than automatically enrolling

Plaintiff and Class Members in credit monitoring services upon discovery of the breach, Defendants merely sent instructions to Plaintiff and Class Members about actions they can affirmatively take to protect themselves.

90.     Plaintiff and Class Members have been damaged by the compromise and exfiltration of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

91.     Plaintiff's Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the Data Breach.

92.     Plaintiff was damaged in that her Private Information is in the hands of cyber criminals.

93.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

94.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

95.     Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, and similar identity theft.

96.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

97.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

98.     Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

99.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

100.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

    a.  Finding fraudulent charges;

    b.  Canceling and reissuing credit and debit cards;

    c.  Purchasing credit monitoring and identity theft prevention;

    d.  Addressing their inability to withdraw funds linked to compromised accounts;

    e.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    f.  Placing "freezes" and "alerts" with credit reporting agencies;

    g.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

    h.  Contacting financial institutions and closing or modifying financial accounts;

    i.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    j.  Paying late fees and declined payment fees imposed because of failed automatic payments that were tied to compromised cards that had to be cancelled; and

    k.   Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

101.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendants, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password protected.

102.    Further, because of Defendants' conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information —which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

103.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## VIII.   <u>CLASS ACTION ALLEGATIONS</u>

104.    Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

105.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**All persons whose Private Information was compromised because of the October, 2024 Data Breach (the "Class").**

106.    Excluded from the Class are Defendants' officers and directors, and any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

107.    Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery. The proposed Class meets the criteria for certification under Rule 23 of the Federal Rules of Civil Procedure.

108.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. The exact number of Class Members is unknown to Plaintiff now, but upon information and belief, thousands of individuals were affected.

109.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Defendants unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

    b. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d. Whether Defendants' data security systems prior to and during the Data Breach adhered to industry standards;

    e. Whether Defendants owed a duty to Class Members to safeguard their Private Information;

    f. Whether Defendants breached their duty to Class Members to safeguard their Private Information;

    g. Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

    h. Whether Plaintiff and Class Members suffered legally cognizable damages from Defendants' misconduct;

    i. Whether Defendants' conduct was negligent;

    j. Whether Defendants' acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

k. Whether Defendants were unjustly enriched;

l. Whether Defendants failed to provide notice of the Data Breach promptly; and

m. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

110.    Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common misconduct of Defendants. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and no defenses are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

111.    Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

112.    Predominance. Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

113.    Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high

and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

114.    Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

115.    Likewise, issues that will arise in this case are appropriate for class certification because such issues are common to the Class, the resolution of which would advance matter and the parties' interests therein. Such issues include, but are not limited to:

   a.   Whether Defendants failed to timely notify the public of the Data Breach;

   b.   Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

   c.   Whether Defendants' security measures to protect its data systems were reasonable considering best practices recommended by data security experts;

   d.   Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

   e.   Whether Defendants failed to take commercially reasonable steps to safeguard consumer Private Information; and

   f.   Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

116.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendants.

## IX.     CAUSES OF ACTION

### FIRST COUNT
### NEGLIGENCE
#### (On Behalf of Plaintiff and All Class Members)

117.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

118.    Defendants required AHN's patients, including Plaintiff and Class Members, to submit non-public personal information to obtain healthcare services.

119.    Defendants also create and store medical records and other protected health information of AHN's patients, including records of treatments and diagnoses.

120.    By creating, collecting and storing this data in Defendants' computer property, and sharing it and using it for commercial gain, Defendants had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of a Data Breach.

121.    Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

122.    Defendants' duty of care to use reasonable security measures arose because of the special relationship that existed between AHN and its patients, which is recognized by laws and regulations including, but not limited to, HIPAA, as well as common law. Defendants could ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

123.    Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all the healthcare, dental, and/or medical information at issue constitutes "protected health information" within the meaning of HIPAA.

124.    In addition, Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

125.    Defendants' duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential Private Information.

126.    Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.  Failing to adequately monitor the security of its networks and systems;

c.  Failing to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

d.  Failing to store Class Members' Private Information in an encrypted state;

e.  Allowing unauthorized access to Class Members' Private Information;

f.  Failing to detect timely that Class Members' Private Information had been compromised; and

g.  Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

127.    It was foreseeable that Defendants' failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

128.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

129.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

130.    Defendants' negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and unsecure manner.

131.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

**SECOND COUNT**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and All Class Members)**

132.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein, and brings this claim solely against Defendant AHN.

133.    When Plaintiff and Class Members provided their Private Information to Defendant AHN in exchange for Defendant AHN's services, they entered implied contracts with Defendant AHN under which Defendant AHN agreed to reasonably protect such information.

134.    Defendant AHN solicited, offered, and invited Class Members to provide their Private Information as part of Defendan AHN's regular business practices. Plaintiff and Class Members accepted Defendant AHN's offers and provided their Private Information to Defendant AHN.

135.    In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant AHN's data security practices complied with relevant laws and regulations, including HIPAA, and adhered to industry standards.

136.    Plaintiff and Class Members paid money to Defendant AHN with the reasonable belief and expectation that Defendant AHN would use part of its earnings to obtain adequate data security. Defendant AHN failed to do so.

137.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant AHN in the absence of the implied contract between them and Defendant AHN to keep their information reasonably secure.

138.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant AHN in the absence of its implied promise to monitor its computer systems and networks to ensure that they adopted reasonable data security measures.

139.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant AHN.

140.    Defendant AHN breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

141.    As a direct and proximate result of Defendant AHN's breach of the implied contracts, Class Members sustained damages as alleged here, including the loss of the benefit of the bargain.

142.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

143.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant AHN to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

### THIRD COUNT
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members)

144.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

145.    Plaintiff brings this claim individually and on behalf of all Class Members. This count is pled in the alternative to the breach of implied contract count above.

146.    Plaintiff and Class Members conferred a monetary benefit on Defendants. They paid AHN and/or its agents for medical services and in so doing provided Defendants with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendants the medical services that were the subject of the transaction and have their Private Information protected with adequate data security.

147.    Defendants knew that Plaintiff and Class Members conferred a benefit which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

148.    Defendant enriched itself by saving the costs Defendants reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Rather than providing a reasonable level of security that would have prevented the hacking incident, Defendants instead calculated to increase their own profits at the expense of Plaintiff and Class Members by using cheaper, ineffective security measures. Plaintiff and Class

Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security.

149.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

150.    Defendants failed to secure Plaintiff's and Class Members' Private Information and thus did not provide full compensation for the benefit Plaintiff and Class Members provided.

151.    Defendants acquired the Private Information through inequitable means in that they failed to disclose the inadequate security practices alleged.

152.    If Plaintiff and Class Members knew that Defendants had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to Defendants.

153.    Plaintiff and Class Members have no adequate remedy at law.

154.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

    a.   actual identity theft;

    b.   the loss of the opportunity to control how their Private Information is used;

    c.   the compromise, publication, and/or theft of their Private Information;

    d.   out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information;

    e.   lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft;

    f.   the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information in its continued possession; and

    g.   future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiff and Class Members.

155.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

156.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendants' services.

## X.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of herself and the Class described above seeks the following relief:

    a.   For an Order certifying this action as a class action, defining the Class as requested herein, appointing Plaintiff and her counsel to represent the Class, and finding that Plaintiff is a proper representative of the Class requested herein;

    b.   For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

    c.   For equitable relief compelling Defendants to use appropriate methods and policies related to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

    d.   For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendants' wrongful conduct;

    e.   For an order directing Defendants to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

    f.   For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g.   For an award of punitive damages, as allowable by law;

h.   For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.   Pre- and post-judgment interest on any amounts awarded; and

j.   Any other relief that this court may deem just and proper.

Dated: November 4, 2024                          Respectfully submitted,

                                                 */s/ John P. Kristensen*
                                                 John P. Kristensen, BBO #712688
                                                 Kristensen Law Group
                                                 53 State Street, Ste. 500
                                                 Boston, MA 02109
                                                 Telephone (617) 913-0363

                                                 Leigh S. Montgomery*
                                                 Texas Bar No. 24052214
                                                 lmontgomery@eksm.com
                                                 **EKSM, LLP**
                                                 1105 Milford Street
                                                 Houston, Texas 77006
                                                 Phone: (888) 350-3931
                                                 Fax: (888) 276-3455

                                                 **ATTORNEYS FOR PLAINTIFF AND THE
                                                 PUTATIVE CLASS**

                                                 (* denotes *pro hac vice* forthcoming)

## DEMAND FOR JURY TRIAL

Dated: January 27, 2025

Respectfully submitted,

*/s/ John P. Kristensen*
John P. Kristensen, BBO #712688
Kristensen Law Group
53 State Street, Ste. 500
Boston, MA 02109
Telephone (617) 913-0363

Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

(* denotes *pro hac vice* forthcoming)